UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | | |
|---|---|---|
| RUBEN WASHINGTON, JR., | ) | |
| Plaintiff, | ) | |
| v. | ) | CAUSE NO.: 2:17-CV-274-TLS |
| TRADE WINDS, | ) | |
| Defendant. | ) | |

**OPINION AND ORDER**

This matter is before the Court on the Defendant's Motion for Summary Judgment [ECF No. 43], filed on December 28, 2018. The Defendant, Trade Winds, argues that is entitled to summary judgment on Plaintiff Ruben Washington, Jr.'s discrimination claim brought under the Americans with Disabilities Act as well as on the Plaintiff's retaliation claim. The Court agrees. Therefore, the Defendant's request for summary judgment is GRANTED.

**PROCEDURAL HISTORY**

On June 28, 2017, the Plaintiff filed a Complaint [ECF No. 1] in which he brought claims of (1) disability discrimination pursuant to the Americans with Disabilities Act (ADA) and (2) retaliation. *See* Compl., p. 1, ECF No. 1. Within his Complaint, the Plaintiff alleged that he was "disabled but able to work. I was hired with medical restrictions on working. One of them is a 50lb lifting restriction." *Id.* at 2. The Plaintiff alleged that the Defendant was "informed or aware of my restrictions" and violated these restrictions. *Id.* The Plaintiff averred that he "complained about it to . . . the chain of command in writing. Nothing was done regarding my complaint." *Id.* The Plaintiff alleged that he was terminated due to his disability and his August letter to human

resources. *See id.* at 1–2. Attached to the Complaint was the Plaintiff's letter to human resources and a Notice of Suit Rights from the EEOC. *See* Ex. 1, ECF No. 1-1.

On December 28, 2018, the Defendant filed the instant Motion for Summary Judgment [ECF No. 43]. Because the Plaintiff is pro se, the Defendant gave notice as required under Northern District of Indiana Local Rule 56-1(f). *See* Defendant's Notice of Summary-Judgment Motion, ECF No. 47. The Plaintiff, however, did not file any Response to the Defendant's Motion for Summary Judgment. This matter is fully briefed and ripe for ruling.

## LEGAL STANDARD

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The Supreme Court has explained that "the burden on the moving party may be discharged by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "If the moving party has properly supported his motion, the burden shifts to the non-moving party to come forward with specific facts showing that there is a genuine issue for trial." *Spierer v. Rossman*, 798 F.3d 502, 507 (7th Cir. 2015). "To survive summary judgment, the nonmoving party must establish some genuine issue for trial such that a reasonable jury could return a verdict in [his] favor." *Gordon v. FedEx Freight, Inc.*, 674 F.3d 769, 772–73 (7th Cir. 2012). Within this context, the Court must construe all facts and reasonable inferences from those facts in the light most favorable to the nonmoving party. *Frakes v. Peoria Sch. Dist. No. 150*, 872 F.3d 545, 550 (7th Cir. 2017). However, the nonmoving party "is only entitled to the benefit of inferences supported by admissible evidence, not those 'supported by only speculation or conjecture.'" *Grant v. Trs. of Ind. Univ.*, 870 F.3d 562, 568 (7th Cir. 2017) (citing *Nichols v.*

*Michigan City Plant Planning Dep't*, 755 F.3d 594, 599 (7th Cir. 2014)). Likewise, irrelevant or unnecessary factual disputes do not preclude the entry of summary judgment. *Carroll v. Lynch*, 698 F.3d 561, 564 (7th Cir. 2012) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). Furthermore, "[a] party opposing a properly supported motion for summary judgment may not rest upon the mere allegations or denials of his pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial.'" *Widmar v. Sun Chemical Corp.*, 772 F.3d 457, 460 (7th Cir. 2014) (quoting *Anderson*, 477 U.S. at 248 (alterations in original)).

### STATEMENT OF MATERIAL FACTS

**A.     The Plaintiff's Employment and Performance Issues**

The Defendant is an organization that provides services for adults with physical and intellectual disabilities. *See* Aff. of Lisa Previs ¶ 1, ECF No. 50-18. On March 14, 2013, the Defendant hired the Plaintiff as a Direct Service Professional (DSP). *Id.* ¶ 3. The Plaintiff worked as a DSP at the Forrest Group Home. Ex. 2, Redacted Dep. Tr., p. 1, ECF No. 49-2.[1] In general, a DSP is an employee who assists patients with daily living activities. *See generally* Ex. L, Job Description, ECF No. 50-30. The Plaintiff was an at-will employee and did not have a written contract with the Defendant. Aff. of Lisa Previs ¶ 7, ECF No. 50-18.

Throughout the period of his employment, the Plaintiff had several work-related issues. *See* Aff. of Lisa Previs ¶ 4, ECF No. 50-18. Specifically, the Defendant (1) had been suspended for leaving residents unattended on a bus, (2) had been counseled for rude and discourteous treatment of a new employee, (3) had been suspended for failing to provide an antibiotic to a resident, (4) had been counseled for not following protocol, (5) received a subpar performance

---

[1] Throughout this Opinion and Order, the Court will cite to the CM/ECF electronic page header rather than the actual page number of the document. This is both convenient and practical due to the nature of the submitted documents.

3

review, (6) received a written warning for failing to properly administer medications to a patient, (7) received a written warning for improperly securing a patient in a wheelchair, and (8) had been counseled for failing to properly report and document a patient's injury. *Id.* (citing Ex. A, ECF No. 50-19; Ex. B, ECF No. 50-20; Ex. C, ECF No. 50-21; Ex. D, ECF No. 50-22; Ex. E, ECF No. 50-23; Ex. F, ECF No. 50-24; Ex. G, ECF No. 50-25; Ex. H, ECF No. 50-26).

**B.     The August 2016 Complaint to Human Resources**

In August 2016, the Plaintiff sent a letter to several of the Defendant's employees, including Director Lisa Previs and Human Resources Manager Julia Long. *See* Letter, p. 13, ECF No. 50-17. Within his letter, the Plaintiff makes numerous complaints regarding House Manager LaTrina ("Trina") Nunn. For example, the Plaintiff complains about (1) the amount of work he is given, (2) various workplace disputes he had with Nunn, (3) the quality of the nursing home, (4) the work ethic of Nunn and other employees at the nursing home, and (5) Nunn's "harassment" that occurred when the Plaintiff tried to call in sick due to being in the hospital. *Id.* at 1–11. During his deposition, the Plaintiff testified that he wrote the letter to complain about the working conditions in the home and the amount of work he was expected to do. Ex. 2, Redacted Dep. Tr., p. 36, ECF No. 49-2.

Within the letter, the Plaintiff mentions that he is disabled. *See* Letter, p. 11, ECF No. 50-17 ("This house is left to run itself and the guys at For[r]est are the ones being hurt the most. I understand because I am disable[d], but I can take care of myself. But one never knows what health problems they may have in the future."). In the letter, the Plaintiff contemplates whether he should resign due to his worsening medical condition and the stress of the work environment. *Id.* at 12–13. However, the Plaintiff's letter does not make any request for accommodations based upon his disability. *See id.* at 1–16. Likewise, within the letter, the Plaintiff does not allege

4

that he is being discriminated against based upon his disability or any other protected factor. *See id.* Further, within his letter, the Plaintiff does not claim that he has a lifting restriction or that he has difficulty lifting patients based upon his disability. *See id.*

C.     **The Alleged Verbal Altercation and Termination of Employment**

May Jamison, one of the Defendant's employees, stated that, on "the morning of October 19, 2016, I was in the living room of the Forrest Group Home and saw [the Plaintiff] come from the office in the home and comment to co-worker [S.L.] that she should get off her 'fat lazy ass' and do something." Ex. 4, Aff. of May Jamison ¶ 3, ECF No. 51-2. Director Lisa Previs, who oversees the discipline of all the Defendant's employees, stated that she "was advised that [the Plaintiff] commented to [S.L.] about her 'fat lazy ass' in front of a co-worker and residents." Aff. of Lisa Previs ¶ 5, ECF No. 50-18. Director Previs stated that the Plaintiff's "conduct constituted abusive behavior and violated TradeWinds' policies and, in light of [the Plaintiff's] prior poor performance, I made the decision to terminate [his] employment." *Id.* On or about October 19, 2016, Director Previs decided to terminate the Plaintiff's employment. *Id.* On October 24, 2016, LaTrina Nunn issued a disciplinary report in which she stated that the Plaintiff's comments to S.L. had violated company policy. *See* Disciplinary Report, pp. 1–2, ECF No. 50-14. The report stated that the Plaintiff's employment was terminated. *Id.* at 2.

However, the Plaintiff refused to sign the disciplinary report. *See id.* at 2. Within the "Employee Comments" section of the disciplinary report, the Plaintiff wrote that he "didn't say anything to her." *Id.* at 3. During his deposition, the Plaintiff disputed that the verbal altercation occurred and testified that he "didn't say anything to her. I didn't have anything to do with it." Ex. 2, Redacted Dep. Tr., pp. 25–26, ECF No. 49-2. The Plaintiff testified that he was fired because of his August 2016 letter to human resources. *Id.* at 37.

5

**D.      The Plaintiff's Physical Work Restrictions**

The Plaintiff testified that he was medically restricted from lifting anything over fifty pounds. *Id.* at 17. The Plaintiff stated that if he had "to lift patients, I would ask for assistance or I wouldn't be assigned to that patient." *Id.* Specifically, during his deposition, the following exchange occurred:

> Q: So what duties were you prohibited from doing?
> A: Lifting anything over—50 pounds or more.
> Q: As a direct care professional?
> A: If I have to lift patients, I would ask for assistance or I wouldn't be assigned to that patient.
> Q: So if you had to lift more than 50 pounds, they wouldn't make you do it?
> A: No. I had the right to refuse.
> Q: And I'm sure you did on several occasions?
> A: Yes.

*Id.*

Director Previs stated that she "was not aware that [the Plaintiff] had any disability that impacted or prevented him from performing his job as a DSP." Aff. of Lisa Previs ¶ 8, ECF No. 50-18. However, Previs emphasized that "[a]n essential function of the DSP position is the ability to 'push, lift and transfer individuals weighing more than 50 pounds.'" *Id.* (quoting Ex. L, Job Description, ECF No. 50-30). Specifically, the job description for a DSP requires that an applicant "[m]ust be in good physical condition to be able to push, lift and transfer individuals weighing more than 50 pounds." Ex. L, Job Description, p. 5, ECF No. 50-30. Previs stated that "[a] DSP who cannot push, lift or transfer an individual weighing more than 50 pounds would not be qualified for the DSP position." Aff. of Lisa Previs ¶ 8, ECF No. 50-30.

E.    **The Plaintiff's Charge of Discrimination**

On March 19, 2017, the Plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commission (EEOC). *See* Ex. 1, EEOC Charge, p. 2, ECF No. 49-1. The Plaintiff asserted discrimination based upon "retaliation." *Id.* However, the Plaintiff did not identify "disability" as a basis for discrimination.[2] *Id.* The Plaintiff identified the dates that the retaliation occurred as from October 19, 2016, until October 24, 2016. *Id.* Within the narrative section of the form, the Plaintiff stated only as follows:

> I was employed by Tradewinds in the position of DSP. During August 2016, I wrote a letter to the company complaining about the unfair treatment I had received from House Manger LaTrina Nunn, as well as Nunn's poor performance. On October 24, 2016, I was discharged based on false accusations from another employee, [S.L.], who is a personal friend of Nunn's. I believe that Nunn and [S.L.] conspired against me because of the letter I wrote complaining about Nunn. I believe that I have been retaliated against for complaining about unfair treatment from my supervisor.

*Id.*

## ANALYSIS

In pertinent part, the Defendant argues that (1) the Plaintiff's discrimination claim is beyond the scope of his EEOC charge and (2) the Plaintiff's retaliation claim fails as a matter of law. The Court addresses these issues in turn.

A.    **The ADA Discrimination Claim**

The Plaintiff's claim of disability discrimination is beyond the scope of his EEOC charge. "An ADA plaintiff must file a charge with the EEOC before bringing a court action against an employer." *Whitaker v. Milwaukee County*, 772 F.3d 802, 812 (7th Cir. 2014) (citing 42 U.S.C. § 12117(a)). "[A] plaintiff is barred from raising a claim in the district court that had not been raised in his or her EEOC charge unless the claim is reasonably related to one of the EEOC

---

[2] Simply put, in the section asking him to check appropriate boxes for the basis of discrimination, he checked the box for "retaliation" but did not check the box for "disability." *Id.*

charges and can be expected to develop from an investigation into the charges actually raised." *Riley v. City of Kokomo*, 909 F.3d 182, 189 (7th Cir. 2018) (quoting *Green v. Nat'l Steel Corp.*, 197 F.3d 894, 898 (7th Cir. 1999) (alterations in original)).

In this case, the Plaintiff's EEOC charge only asserted discrimination based on retaliation. Ex. 1, EEOC Charge, p. 2, ECF No. 49-1. The Plaintiff did not assert discrimination based upon disability. *Id.* Furthermore, within the narrative section of the charge, the Plaintiff wrote only as follows:

> I was employed by Tradewinds in the position of DSP. During August 2016, I wrote a letter to the company complaining about the unfair treatment I had received from House Manger LaTrina Nunn, as well as Nunn's poor performance. On October 24, 2016, I was discharged based on false accusations from another employee, [S.L.], who is a personal friend of Nunn's. I believe that Nunn and [S.L.] conspired against me because of the letter I wrote complaining about Nunn. I believe that I have been retaliated against for complaining about unfair treatment from my supervisor.

*Id.*

As indicated above, the Plaintiff's EEOC charge did not mention disability discrimination or allegations that could be reasonably construed as disability discrimination. *Id.* Moreover, the Plaintiff's August 2016 letter to human resources did not request an accommodation based upon his disability or allege that he was discriminated against based upon his disability. *See* Letter, pp. 1–16, ECF No. 50-17. Further, the August 2016 letter did not mention that the Plaintiff had a lifting restriction or that he had difficulty lifting heavy patients. *See id.* Thus, the Plaintiff's claim of disability discrimination is not reasonably related to his EEOC charge. *See Riley*, 909 F.3d at 189. Further, it is undisputed that the Plaintiff did not specifically include a claim of disability discrimination within his EEOC charge. As such, the Plaintiff's discrimination claim fails because it is beyond the scope of his EEOC charge.[3]

---

[3] Because the Plaintiff's disability discrimination claim has been rejected on procedural grounds, the Court need not address the legal merits of this claim. However, the Court emphasizes that the Plaintiff's disability claim would

**B.     The Retaliation Claim**

The Plaintiff alleged that he was retaliated against for his August 2016 letter to human resources. *See* Compl. pp. 1–2, ECF No. 1. The Defendant argues that this claim fails because the Plaintiff did not engage in protected activity and cannot demonstrate causation. The Court concludes that (1) the August 2016 letter is not protected activity because it did not request an accommodation or raise a claim of discrimination and (2) the Plaintiff failed to demonstrate a causal connection between his lifting restriction and termination. As such, the Plaintiff's retaliation claim fails as a matter of law.

*1.     The Applicable Law*

The ADA provides: "No person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by this chapter or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this chapter." 42 U.S.C. § 12203(a).[4] "Employers are forbidden from retaliating against employees who raise ADA claims regardless of whether the initial claims of discrimination are meritless." *Dickerson v. Bd. of Trs. of Cmty. Coll. Dist. No. 522*, 657 F.3d 595, 601 (7th Cir. 2011). To establish a retaliation claim, a plaintiff must demonstrate (1) that he engaged in protected activity, (2) that he suffered an adverse action, and (3) that there is a causal connection between the two. *Rodrigo*, 879 F.3d at 243 (citing *Preddie v. Bartholomew*

---

likely have failed as a matter of law. *Compare* Ex. 2, Redacted Dep. Tr., p. 17, ECF No. 49-2 (The Plaintiff testified that he was medically restricted from lifting over fifty pounds and that if he had "to lift patients, [he] would ask for assistance or [he] wouldn't be assigned to that patient."), *and* Aff. of Lisa Previs ¶ 8, ECF No. 50-18 ("An essential function of the DSP position is the ability to 'push, lift and transfer individuals weighing more than 50 pounds.'" (quoting Ex. L, Job Description, ECF No. 50-30)), *with Majors v. Gen. Elec. Co.*, 714 F.3d 527, 534 (7th Cir. 2013) ("To have another employee perform a position's essential function, and to a certain extent perform the job for the employee, is not a reasonable accommodation." (citing *Cochrum v. Old Ben Coal Co.*, 102 F.3d 908, 912 (7th Cir. 1996)).

[4] Although neither the EEOC Charge nor the Complaint in this case identifies the federal law under which the Plaintiff claims retaliation, it appears that Plaintiff is alleging retaliation in violation of the ADA.

*Consol. Sch. Corp.*, 799 F.3d 806, 814 (7th Cir. 2015)); *see also Sanford v. Thor Indus., Inc.*, 286 F. Supp. 3d 938, 948 (N.D. Ind. 2018). The legal standard under which courts must analyze retaliation claims is whether the evidence would permit a reasonable factfinder to conclude that the plaintiff's protected activity caused the adverse employment action. *Rowlands*, 901 F.3d at 801 (quoting *Ortiz v. Werner Enters., Inc.*, 834 F.3d 760, 765 (7th Cir. 2016)); *see also* Zachary J. Strongin, Note, *Fleeing the Rat's Nest: Title VII Jurisprudence After Ortiz v. Werner Enterprises, Inc.*, 83 Brook. L. Rev. 725 (2018).

2. ***The August 2016 Letter***

The Court first concludes that the August 2016 letter is not protected activity. "Protected activities include asserting one's rights under the Act either by seeking accommodation or by raising a claim of discrimination due to disability." *Rodrigo*, 879 F.3d at 243 (citing *Preddie*, 799 F.3d at 814–15). "Statutorily-protected activity 'requires more than simply a complaint about some situation at work, no matter how valid the complaint might be.'" *Skiba v. Ill. Cent. R.R. Co.*, 884 F.3d 708, 718 (7th Cir. 2018) (quoting *Cole v. Bd. of Trs. of N. Ill. Univ.*, 838 F.3d 888, 901 (7th Cir. 2016)). "Rather, 'the complaint must indicate [that] discrimination occurred because of sex, race, national origin, or some other protected class.'" *Id.* (quoting *Tomanovich v. City of Indianapolis*, 457 F.3d 656, 663 (7th Cir. 2006) (alterations in original)); *see also Smith v. Lafayette Bank & Tr. Co.*, 674 F.3d 655, 658 (7th Cir. 2012). "Merely complaining in general terms of discrimination or harassment, without indicating a connection to a protected class or providing facts sufficient to create that inference, is insufficient." *Tomanovich*, 457 F.3d at 663.

Within his August 2016 letter to human resources, the Plaintiff makes numerous complaints regarding House Manager LaTrina Nunn. *See* Letter, ECF No. 50-17. The Plaintiff's letter complained about (1) the amount of work he was given, (2) various workplace disputes

with Nunn, (3) the quality of the nursing home, (4) the work ethic of Nunn and other employees, and (5) Nunn's "harassment" that occurred when he called in sick. *Id.* at 1–11. However, these general work-related complaints do not indicate that discrimination occurred because of disability or some other protected class. *See Skiba*, 884 F.3d at 718. Thus, they are not protected activity.

The August 2016 letter does mention, in passing, that the Plaintiff is disabled. *See* Letter, p. 11, ECF No. 50-17 ("This house is left to run itself and the guys at For[r]est are the ones being hurt the most. I understand because I am disable[d], but I can take care of myself. But one never knows what health problems they may have in the future."). Within the letter, the Plaintiff contemplates whether he should resign due to his worsening medical condition. *Id.* at 12–13. However, the August 2016 letter did not request an accommodation. *See id.* at 1–16. Likewise, the August 2016 letter did not state or imply that the Plaintiff was discriminated against based upon his disability. *See id.* Further, the letter does not claim or imply that the Plaintiff had a lifting restriction or that he had difficulty lifting patients due to his disability. *See id.* Therefore, the August 2016 letter does not qualify as protected activity because it does not seek an accommodation or raise a claim of discrimination based upon a protected class. *Rodrigo*, 879 F.3d at 243.

3.    ***The Plaintiff's Lifting Restriction***

The Plaintiff fails to establish any causal connection between his request for a lifting restriction and his termination. "A plaintiff demonstrates a causal connection by showing that the defendant 'would not have taken the adverse . . . action but for [his] protected activity.'" *Baines v. Walgreen Co.*, 863 F.3d 656, 661 (7th Cir. 2017) (quoting *Greengrass v. Int'l Monetary Sys., Ltd.*, 776 F.3d 481, 486 (7th Cir. 2015)). "An employer must have actual knowledge of the

employee's protected activity to state a claim for retaliation." *Smith*, 674 F.3d at 658 (citing *Nagle v. Vill. of Calumet Park*, 554 F.3d 1106, 1122 (7th Cir. 2009)); *see also Burton v. Bd. of Regents of Univ. of Wis. Sys.*, 851 F.3d 690, 698 n.6 (7th Cir. 2017). It is not enough that an employer could have or should have known about the protected activity. *Tomanovich*, 457 F.3d at 668.

The Plaintiff testified that he was medically restricted from lifting anything over fifty pounds. *See* Ex. 2, Redacted Dep. Tr., p. 17, ECF No. 49-2. If he had to lift a patient, he "would ask for assistance or [he] wouldn't' be assigned to that patient." *Id.* The Plaintiff testified that he was not required to lift more than fifty pounds and that he "had the right to refuse." *Id.* Based upon this testimony, the Plaintiff could have engaged in protected activity if he had requested an accommodation. *Rodrigo*, 879 F.3d at 243.

However, assuming for the moment that he requested an accommodation, the Plaintiff fails to establish any causal connection between this activity and his termination. For example, the Plaintiff testified that he was fired due to his August 2016 letter to human resources. *Id.* at 37. The Plaintiff did not testify, for instance, that he was terminated because he requested a lifting restriction based upon a medical condition. Further, as shown above, the August 2016 letter did not request an accommodation or complain about disability discrimination. *See* Letter, pp. 1–16, ECF No. 50-17. Further, the August 2016 letter did not mention that the Plaintiff had a lifting restriction or that he had difficulty lifting patients. *See id.* Director Previs, who averred that she fired the Plaintiff for the alleged verbal altercation, stated that she "was not aware that [the Plaintiff] had any disability that impacted or prevented him from performing his job as a DSP." Aff. of Lisa Previs ¶ 8, ECF No. 50-18. The Plaintiff failed to present any evidence which could possibly demonstrate that Director Previs was aware of his lifting restrictions at the time of

his termination. As such, even if he had requested an accommodation, the Plaintiff fails to demonstrate any causal connection between the protected activity and his termination. *See Nagle*, 554 F.3d at 1121–22 (the plaintiff failed to establish a causal connection between his suspension and protected activity when he failed to present evidence showing that his supervisor was aware of his EEOC charge at the time of his suspension). Accordingly, the Plaintiff's retaliation claim fails as a matter of law. *Smith*, 674 F.3d at 658.

## CONCLUSION

For the reasons stated above, the Defendant's Motion for Summary Judgment [ECF No. 43] is GRANTED. The Clerk of Court is DIRECTED to enter judgment in favor of the Defendant and against the Plaintiff.

SO ORDERED on May 19, 2020.

s/ Theresa L. Springmann  
CHIEF JUDGE THERESA L. SPRINGMANN  
UNITED STATES DISTRICT COURT